Leonard GREGORY, Jr., Appellant,

v.

Warden Calvin AUGER, Assistant Warden Sissel and Lt. Michael Bickford, Appellees.

Leonard GREGORY, Jr., Appellee,

v.

Warden Calvin AUGER, Assistant Warden Sissel and Lt. Michael Bickford, Appellants.

Nos. 84–2191, 84–2228.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1985.

Decided July 24, 1985.

Donald T. McDougall, Iowa City, Iowa and Bridget Chambers, Student Legal Intern, U. of Iowa, Iowa City, Iowa, for Leonard Gregory.

John Parmeter, Des Moines, Iowa, for Calvin Auger et al.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

These appeals are from a decision of the district court on Leonard Gregory's claims under 42 U.S.C. § 1983 that the Iowa Men's Reformatory's policies restricting the mail privileges of inmates placed temporarily in the disciplinary detention section of the prison were constitutionally infirm. We affirm the decision of the district court.[1]

Gregory, a Reformatory inmate serving a life sentence, wrote three Iowa chambers of commerce, requesting that he be sent

---

1. The Honorable Edward J. McManus, then Chief Judge, United States District Court for the Northern District of Iowa. Judge McManus has since assumed senior status.

promotional literature about various communities. Before receiving the material, Gregory was placed on disciplinary detention status (DD 1) for sixty days for misbehavior unrelated to this action. At the time, the prison's written policy was that a DD 1 inmate would receive first class mail only; other mail would be stored until the inmate's DD 1 status was upgraded. According to a joint stipulation entered into by the parties, there was also in effect at the time an unwritten policy that DD 1 inmates would receive only the portion of their first class mail which was of a personal, legal, or religious nature.[2] A second written rule, not challenged in this suit, limited the amount of mail an inmate could accumulate in his cell.

Gregory received literature from two chambers of commerce without incident. When the material from the third chamber of commerce arrived a prison official orally advised Gregory that that material would be withheld until Gregory's DD 1 status had expired. The earlier mailings were also confiscated. The three pieces of mail (except for certain maps not at issue in this appeal) were returned to Gregory when his DD 1 status was upgraded.

Alleging the mail policies violated the first and fourteenth amendments, Gregory subsequently filed the present lawsuit for damages and injunctive relief against the Warden, the Assistant Warden, and the correctional supervisor who had made the decision to withhold the mail. The case was initially heard before a magistrate; the district court adopted the magistrate's findings and conclusions in full. The district court rejected Gregory's first amendment claim and his prayer for an award of damages, but granted certain injunctive relief on procedural due process grounds. These appeals by both sides followed.

*1. First Amendment*

 It is settled that prisoners retain all first amendment rights not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In determining whether a prison's policies or regulations impermissibly impinge on prisoners' retained first amendment rights, courts must (1) determine whether the policies or regulations further an important or substantial governmental interest unrelated to the suppression of expression; and (2) determine whether the limitation of first amendment freedoms is no greater than is necessary or essential to the governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). *See also Bell v. Wolfish*, 441 U.S. 520, 545, 548, 99 S.Ct. 1861, 1877, 1878, 60 L.Ed.2d 447 (1979). Gregory argues that the mail restrictions here fall afoul of the first amendment because they are overbroad, and because they are content-based. Gregory also argues the district court's contrary conclusions were based on an erroneous allocation of the burden of proof.

 At the hearing on these claims, the state defendants indicated the mail restrictions served to prevent cellblock fires, facilitate cell searches, and make disciplinary detention unattractive to inmates. We agree with Gregory that the first two of these purported justifications were insufficient to sustain the policies on the facts of this case. The record indicates cellblock fires have been eliminated entirely in the Reformatory's DD 1 range by new regulations prohibiting inmates from possessing matches. The goal of making cell searches

---

**2.** After the events at issue, the written policy was revised as follows, to more accurately reflect the prison's actual policies regarding the mail privileges of DD 1 inmates:

> DD 1 residents will be permitted to receive all first class type mail except mail which may be mailed as first class but that which is commercial, entertainment, or "junk" mail, i.e.,

newspapers, magazines, brochures from a business or company, tourist or travel information, pamphlets and maps, etc. (Final determination will be made by the third floor supervisor.) Mail of this nature which is not allowed will be stored until release from this status. A receipt slip will be given to the resident indicating what mail is being stored.

easier is seemingly being achieved by the restriction on the quantity of mail an inmate may accumulate in his cell at any given time.

■ However, as the district court found, the mail policies were also designed to make disciplinary detention less pleasant, so that inmates would be encouraged to avoid the types of behavior that would lead to their being placed on DD 1 status. While the Supreme Court has expressly reserved judgment regarding the validity of temporary disciplinary prohibitions of an inmate's correspondence, *Procunier v. Martinez*, 416 U.S. at 412 n. 12, 94 S.Ct. at 1811 n. 12, the Court has also identified preservation of internal order and discipline as one of the central tasks in the maintenance of penal institutions. *Id.* at 412, 94 S.Ct. at 1810.

We cannot say deterrence of future infractions of prison rules is, under the first amendment, an inappropriate justification for temporarily restricting the rights of inmates to receive certain types of correspondence; nor can we say the regulations in this case failed to serve such a purpose. As the Fifth Circuit has remarked in upholding mail policies almost identical to those before us now,

> there can be no doubt ... that solitary confinement is a disciplinary measure whose very essence is the deprivation of interests the first amendment protects: association with the general prison population and communication with outsiders. To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already imprisoned. Left free to write to anyone in the world and to receive literature of any kind, a prisoner might find punitive isolation desirable, offering solitude and leisure as an alternative to the ordinary conditions of prison work and life.

*Daigre v. Maggio*, 719 F.2d 1310, 1313 (5th Cir.1983). Furthermore, while the "personal, legal, or religious" gloss on the Reformatory's DD 1 correspondence policy would have been a more effective deterrent had it been put in written form and distributed to inmates, inmates were aware they would be permitted only first class mail while on DD 1 status even if they were not precisely informed as to how the mail policies would be implemented. The deterrent effect of the mail policies applied here may deter Gregory from violating prison rules in the future.[3]

■ We are also persuaded the mail restrictions were not overbroad or impermissibly content-oriented. It is important to recognize that the policies were not directed at what mail an inmate could receive, but only at when he could receive it. According to the district court, inmates are placed on DD 1 status for no longer than sixty days. After expiration of DD 1 status, the inmate would receive the mail that had been withheld. Although the "personal, legal, or religious" standard did require officials to classify mail according to content, we believe the Reformatory could properly have established mail policies far more restrictive than this, so long as the disciplinary withholding of mail was only to be temporary. *Cf. Grady v. Wilken*, 735 F.2d 303, 306 (8th Cir.1984) (twenty day hiatus in inmate's receipt of mail occasioned by inmate's transfers to disciplinary detention and to administrative segregation did not impermissibly infringe on inmate's first amendment rights or rights to access to courts). For that reason, we cannot say the Reformatory's more lenient policy, albeit based in some measure upon the content of the mail, violated the first amendment.

■ We find little merit in Gregory's charge that the district court misallocated the burden of proof. While that court's opinion can be read as placing upon appel-

---

**3.** In his reply brief, Gregory suggests the mail policies were unconstitutionally vague because they were in part unwritten. We need not pass on this contention, because the district court properly found Gregory had failed to prove any compensable damages, and because the policies have since been put in writing, making injunctive relief unnecessary.

lant the burden of demonstrating constitutional error by substantial evidence, we do not so read it. In the context of considering the reasonableness of the mail restrictions, the district court recognized that some deference is due prison administrators in adoption and execution of policies and practices needed to preserve order and discipline, and then went on to say: "The rule of deference loses its force, however, when there is substantial evidence that officials have exaggerated their response to security, order, discipline or rehabilitation problems."

Continuing, the court dealt at some length with fire protection, supervision needs, and disciplinary sanctions all in context, and concluded that defendants (appellees) had shown that the correspondence policy was justified. We conclude that the district court properly applied the teachings of *Procunier v. Martinez, supra,* and *Bell v. Wolfish, supra,* and that on this record any error on burden of proof that arguably might be postulated was harmless.

### 2. *Due Process*

■ Reviewing Gregory's procedural due process claims, the district court concluded injunctive relief was necessary. The court held that, whenever an inmate's mail is to be temporarily withheld, due process requires that an inmate receive written notice of the identity of the correspondent, the reason the mail is being withheld, and the name of the withholding officer. The court also indicated that review by an independent officer should be available to an inmate whose mail has been withheld. Although Gregory also contended the Reformatory had been constitutionally required to notify the chambers of commerce that his receipt of the mailings would be delayed, the district court rejected this contention.

The state defendants argue the Reformatory offered Gregory adequate procedural protections. Specifically, defendants note Gregory received oral notice his mail would be withheld; they also note Gregory could have invoked, but did not, the established inmate grievance procedure to obtain review of the decision to withhold mail.

We find these contentions to be without merit. "The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez,* 416 U.S. at 418, 94 S.Ct. at 1814. Consequently, governmental invasions of that interest must be accompanied by appropriate procedural safeguards. *Id.* The written notice required here by the district court will ensure that inmates receive the necessary information, and will also prevent disputes and misunderstandings over the content of notice given. Furthermore, while the record indicates an inmate could invoke the grievance procedure to protest a decision to withhold mail, the record does not establish whether relief could be obtained in the event a valid complaint were made. The newly-issued DD 1 mail policy states that the third floor supervisor will make the "final determination" regarding whether mail will be withheld; it was the third floor supervisor in the present case who decided to withhold Gregory's mail in the first place. We cannot say that the grievance procedure offers a meaningful avenue for independent review in these circumstances. *Cf. Williams v. Morris,* 697 F.2d 1349, 1351 (10th Cir.1982) (conclusive presumption applied in course of grievance procedure rendered procedure "of dubious constitutional sufficiency").

■ Although Gregory argues the chambers of commerce should have also been given notice he would not receive their mailings until his DD 1 status had expired, the district court properly rejected this contention. There is no indication in the record that the chambers of commerce had any particularized interest in being apprised of when Gregory received his mail. In this respect, the present case is distinguishable from *Procunier v. Martinez, supra,* in which personalized correspondence to and from inmates was permanently withheld by the correctional institution.

The decision of the district court is affirmed.