**Edward Eugene LITTLE, Appellant,**

v.

**Larry NORRIS, Warden, Tucker Maximum Security Unit; A.L. Lockhart, Director, Arkansas Department of Correction, Appellees.**

**No. 84–2535.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1985.

Decided April 2, 1986.

---

Rita Gruber, Little Rock, Ark., for appellant.

Sandra Johnson Buchanan, Little Rock, Ark., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Edward Eugene Little appeals from the district court's[1] grant of summary judgment in favor of defendants, Arkansas prison officials. Little, an inmate of the Tucker Maximum Security Unit of the Arkansas Department of Correction, filed three complaints under 42 U.S.C. § 1983 challenging the constitutionality of prison policies which restricted his mail privileges, his right to attend group religious services, and his right to receive legal assistance from another inmate. The district court held, as on motion for summary judgment, that the complaints failed to state a cause of action and dismissed. We affirm.

Little was transferred to the Maximum Security Unit at Tucker after he participated in a potentially violent demonstration at the Cummins Unit. At Tucker he was immediately placed in administrative segregation on investigative status. Subsequent to his transfer and assignment to administrative segregation, he received a "disciplinary" and was sentenced to thirty days in

---

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

punitive isolation.[2] Defendants believed that Little was a serious security risk in the prison.

■ Little first argues that the district court erred in using summary judgment to decide his case.[3] We disagree. Defendants admitted that each of the alleged unconstitutional policies existed. Since there were no genuine disputes of material fact, and the only issue to be decided by the district court was whether the policies violated Little's constitutional rights, summary judgment was the appropriate procedure.[1] *See Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984).

■ In his first complaint, Little states that his constitutional rights were violated because he was not allowed to possess loose postage stamps. This claim is without merit. The policy was enacted in order to eliminate the exchange of contraband among inmates. Inmates may instead purchase envelopes with the postage stamps embossed on them at the commissary. In *Kaestel v. Lockhart*, 746 F.2d 1323, 1325 (8th Cir.1984), we directly addressed this issue and held that "the prohibition against the receipt and use of postal stamps was constitutional."

■ Little also states in the first complaint that he was sentenced to thirty days in punitive isolation, and while on punitive status he was denied the right to receive or send personal correspondence. It is the prison policy that inmates in punitive isolation are not allowed to receive personal mail; however, they may receive legal and media mail (exactly what "media" mail includes is unclear). The mail restriction is temporary in duration and is used in part as a disciplinary sanction. When the in-

mate has served his punitive isolation term he is given all the mail which has been withheld.

The Supreme Court has reserved its opinion on the issue of withholding an inmate's mail as a temporary disciplinary sanction. *Procunier v. Martinez*, 416 U.S. 396, 412 n. 12, 94 S.Ct. 1800, 1811 n. 12, 40 L.Ed.2d 224 (1974). It has stated, however, that "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Id.* at 412–13, 94 S.Ct. at 1811. In this circuit we have previously upheld the temporary suspension of an inmate's nonlegal mail as part of the disciplinary actions. In *Grady v. Wilken*, 735 F.2d 303, 306 (8th Cir.1984), we held that the complete withholding of an inmate's mail for twenty days as part of a disciplinary procedure did not violate the inmate's right of access to the courts. In *Gregory v. Auger*, 768 F.2d 287 (8th Cir. 1985), the inmate was allowed to receive only first class mail which was personal, legal, or religious in nature during the sixty day period he was on disciplinary detention. We held that the restriction of mail privileges did not violate his first amendment rights and that the prison "could properly have established mail policies far more restrictive than this," so long as the restrictions were only temporary. *Id.* at 290.

The purpose of withholding personal mail is to make punitive isolation unpleasant, and thereby discourage improper behavior and promote security within the prison. Because the disciplinary sanction serves a valid purpose, and because thirty days is not an excessive length of time, *see Hutto*

---

**2.** Prisoners awaiting trial on disciplinary charges are at times placed in administrative segregation, conditions of which are very similar to punitive isolation. *See Finney v. Hutto*, 410 F.Supp. 251, 275 n. 10 (E.D.Ark.1976).

**3.** Since defendants filed motions to dismiss supported by affidavits, the district court treated the motions as motions for summary judgment pursuant to Fed.R.Civ.P. 12(b). Little responded to the motion material except for one affidavit filed subsequent to Little's response. Little has claimed no prejudice by that affidavit or by

any lack of notice of opportunity to respond, and we find none. *Compare Kaestel v. Lockhart*, 746 F.2d 1323, 1324 (8th Cir.1984) (failure to give notice was harmless error where material facts not in dispute).

**4.** In his brief on appeal Little has suggested some other issues. These issues were not addressed by the district court, and we confine our opinion to those issues which were stated in the complaints. Little is free to raise the other issues in subsequent complaints if he wishes.

*v. Finney*, 437 U.S. 678, 688, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1978) (limits punitive isolation to a thirty day term), we do not believe the sanction is unconstitutional. However, this does not mean that we fully approve of the mail policy. The prison authorities may wish to consider allowing an inmate to receive legal, religious, and at least some personal mail while he is serving punitive isolation time.

In his second complaint, Little states that his first amendment right to freedom of religion was violated because he was not allowed to attend group religious services while he was in "administrative segregation type confinement." All group religious services were temporarily suspended for those inmates who were transferred to the Maximum Security Unit after their participation in the potentially violent demonstration at the Cummins Unit. Defendants provided an alternative means for worship by having the prison chaplain regularly visit the inmates.

■ An inmate's exercise of freedom of religion may be restricted by the reasonable requirements of prison security. *Otey v. Best*, 680 F.2d 1231, 1234 (8th Cir.1982). Once the prison officials have produced evidence that the restriction placed on an inmate's religious freedom was in response to a security concern, the burden is on the inmate to show by substantial evidence that the prison officials' response was exaggerated. *Id.* at 1233. Prison officials are given a wide range of discretion in dealing with security matters in the prisons. *Rogers v. Scurr*, 676 F.2d 1211, 1216 (8th Cir.1982).

■ Here, the suspension of the right to attend group services was in response to a legitimate security concern, the prevention of any further demonstrations during the period of inmate unrest. Little never alleged in his complaint, or in his response to defendants' motion to dismiss, that the prison officials exaggerated their response to the security consideration, nor is there any indication in the record that defendants' concern for security was unwarrant-

ed. We hold that the prohibition on attendance of group religious services was a reasonable limitation on Little's right to freedom of religion, and there was no violation of his constitutional right.

■ In his third complaint, Little states that while he was in administrative segregation or punitive housing he was denied access to the courts when he was forbidden to receive assistance in the preparation of a legal draft from another inmate who was knowledgeable in the law. Prison officials are required to permit inmates to seek the assistance of other inmates only when there are no other reasonable alternatives available to provide the inmates with meaningful access to the courts. *Johnson v. Avery*, 393 U.S. 483, 488, 490, 89 S.Ct. 747, 750, 751, 21 L.Ed.2d 718 (1969). The Supreme Court recognized that the use of inmate "writ writers" could create a discipline problem. *Id.* at 488, 89 S.Ct. at 750. If there is an adequate law library available or if there is assistance available from persons trained in the law, then the state has satisfied the inmates' right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).

The Maximum Security Unit provides inmates with an adequate law library to which Little has some limited access. While no specific or special arrangements are made for maximum security inmates to have access to inmate assistants known as "writ writers," during such free time as they have inmates may consult with at least some of their fellows. In preparing complaints for use in the United States District Courts, inmates use forms prepared and furnished by the clerks of those courts and the courts liberally appoint counsel upon request.[5] *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003 (8th Cir.1984) (establishes standard for appointment of counsel in civil cases).

However, the right to appointed counsel is not absolute. When the undisputed facts and allegations reflect no conflict of merit in the testimony, no factual or legal com-

---

5. The prison attorney provided by the Department of Correction also is available in habeas

work and in many other types of cases, but

plexity or other good reason for appointing counsel, the appointment need not always be made even where, as here, appointment was requested. *Compare Maclin v. Freake*, 650 F.2d 885, 888 (7th Cir.1981); *Manning v. Lockhart*, 623 F.2d 536, 540 (8th Cir.1980); *Shields v. Jackson*, 570 F.2d 284, 286 (8th Cir.1978).

▮ In light of Little's access to library, court officials, and inmates, limited though that access may have been, and in light of the complete failure to state a claim of merit about conditions of confinement, we find no error of constitutional magnitude and no harmful error of any kind.

Thus, we have concluded that the judgment of the district court should be, and it is, affirmed.[6]

See also, 8th Cir., 790 F.2d 712.

---

cannot assist in suits against the prison authorities which would present conflicts of interest.

6. Although not directly as a part of his complaint, Little suggests that he should be allowed more time in the library. While we need not here consider that claim directly, appellees may wish to consider making available somewhat more library time.