Victor LEONARD, Appellant,

v.

Larry NORRIS, Warden, Maximum Security Unit; A.L. Lockhart, Director, Arkansas Department of Correction, Appellee.

No. 85–1776.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1986.

Decided July 30, 1986.

James G. Lingle, Rogers, Ark., for appellant.

A. Carter Hardage, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STROM,* District Judge.

ARNOLD, Circuit Judge.

This case arises out of two meetings held at the Cummins Unit of the Arkansas Department of Correction on July 13 and 15, 1984. According to the plaintiff, Victor Leonard, now known as Victor Leonard El, the meetings were Muslim religious services. According to prison officials, the meetings were used to air grievances about the institution and its policies, to incite violence, and to advocate a work stoppage. About 270 inmates were present at the meeting, including a number of white inmates, although prison officials claim that

* The Hon. Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by

designation.

Cummins had only 50 Muslim inmates at the time. Following the meeting, 29 inmates identified as leaders, including Leonard, were transferred to the Tucker Maximum Security Unit in an effort to neutralize what prison officials believed was a volatile situation. After trial, the District Court[1] made findings, in substance, upholding the Department of Correction's view that the meeting was not a true religious service but, instead, a potentially explosive attempt to disrupt security at Cummins. This appeal followed. After reviewing the original file of the District Court and Leonard's initial pro se brief, we found that the appeal was not frivolous and directed that counsel be appointed and a transcript of the trial prepared at the expense of the United States. These steps were taken, and the case has now been orally argued. We have also had the benefit of an additional pro se filing from the plaintiff himself, which we have carefully read. The Court is indebted to appointed counsel for appellant for his careful and thorough attention to the case.

Our order appointing counsel directed attention to four issues we considered substantial. We will discuss each of them in turn.

■ 1. Leonard's complaint alleged that he was deprived of his liberty without due process of law by being placed in disciplinary confinement without prior written notice. This requirement comes from *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See also *Finney v. Arkansas Board of Correction,* 505 F.2d 194, 208 (8th Cir.1974); *Finney v. Mabry,* 528 F.Supp. 567, 574 (E.D.Ark. 1981). The complaint alleged that written notice of violation was not given until ten days after Leonard was placed on "punitive status" after his transfer from Cummins to Tucker. At trial, however, the only proof with respect to lack of notice was to the effect that the decision to transfer plaintiff

from Cummins to Tucker was made without prior notice or hearing. The Fourteenth Amendment does not require prior notice or hearing for such a transfer. There is no "liberty interest" in a prisoner's assignment to a particular institution within the Department of Correction. See *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The trial court found that Leonard was placed on temporary "investigative status" upon his arrival at Tucker, and it was only later, after a disciplinary review, that Leonard received punitive time and was demoted to Class 3 prisoner status. There was no proof at trial as to lack of written notice before Leonard was placed in punitive isolation. The State claims that Leonard was given oral notice of the charges against him upon his arrival at Tucker, that he was given written notice before his disciplinary hearing, and that he was given written notice before his disciplinary hearing, and that he was given a timely hearing. Since no contrary proof was presented on these issues, we need not pursue the question further. We hold simply that the only notice issue raised by this record relates to the transfer from Cummins to Tucker, and that the circumstances of this transfer did not violate the Due Process Clause.

2. After the incident at Cummins in July of 1984, Islamic religious services at the Tucker Maximum Security Unit were temporarily suspended. Plaintiff claims that this was an exaggerated response to whatever security problem existed, and that the First Amendment was violated. The suspension was temporary and related only to group services. Visits to inmates in their cells by free-world Muslim clergymen were permitted to continue. Group services have now been resumed.

■ This question is controlled by *Little v. Norris,* 787 F.2d 1241 (8th Cir.1986). *Little* arose out of the same incident that gave rise to the present case. We there

---

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas. Judge Eisele adopted findings recommended by the Hon. Robert W. Faulkner, then United States Magistrate for the Eastern District of Arkansas, who presided over the trial.

held "that the prohibition on attendance of group religious services was a reasonable limitation on Little's right to freedom of religion, and there was no violation of his constitutional right." *Id.* at 1244. This panel is bound by that holding.

3. Leonard also complains about restrictions on mail privileges applied to inmates in punitive isolation. Prison policy does not permit inmates in punitive isolation to receive personal mail. They may, however, receive legal and "media" mail (exactly what "media" mail includes is unclear). When an inmate's 30 days in punitive isolation has been completed, he is given whatever personal mail has come in during the 30-day period. Commission of fresh infractions can lead to distinct 30-day punitive isolation terms' being "stacked" on each other, but even when this occurs, inmates are given a 48-hour respite between 30-day terms, and during these 48 hours their personal mail is delivered to them.

This question is also concluded by *Little v. Norris, supra.* We there held that this mail-withholding policy is not unconstitutional. "The purpose of withholding personal mail is to make punitive isolation unpleasant, and thereby discourage improper behavior and promote security within the prison." *Id.* at 1243. See also *Gregory v. Auger,* 768 F.2d 287 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 601, 88 L.Ed.2d 580 (1985).

4. Inmates in punitive isolation are given no out-of-cell exercise for the first 15 days of punitive confinement. Leonard claims that this policy violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. We disagree. Plaintiff cites *Campbell v. Cauthron,* 623 F.2d 503, 507 (8th Cir.1980), requiring that an inmate confined to his cell for more than 16 hours per day shall "ordinarily be given the opportunity to exercise for at least one hour per day outside the cell." The plaintiff in *Campbell,* however, was a pre-trial detainee, not a convicted prisoner in disciplinary confinement. The word "ordinarily" in the passage just quoted clearly indicates that *Campbell* does not lay down a

per se rule that all inmates must always be given one hour per day exercise outside their cells no matter what their status or the other circumstances of the case. The exercise policy at issue here, though severe, perhaps even harsh, is not cruel or barbaric. It has a purpose: to discourage disruptive behavior that makes an inmate unfit to circulate among the prison's general population. Prison authorities must have some tools available as sanctions for this purpose. The choice of tools and how to apply them is largely left to the good judgment of those authorities. Courts should intervene only when firmly convinced that the Constitution has been violated. We are not so convinced in this case.

At the oral argument counsel for plaintiff earnestly insisted that any punitive isolation imposed upon his client violates the Eighth Amendment, because, according to counsel, Leonard is mentally disturbed and is not able to conform his conduct to the rules of prison life. This contention was not made in the District Court, nor is there any evidence in the record before us to support it. We therefore express no view on the extent to which mental disease or defect would provide a constitutional shield against prison discipline.

This appeal is one of a number of cases arising out of the same incident in July of 1984, several of which raise similar issues. See, *e.g., Little v. Norris, supra.* It would greatly aid this Court and, we should think, the District Court and the parties, if in the future similar multiple suits arising out of the same or closely related incidents could be grouped for hearing and decision. We suggest that the Attorney General of Arkansas, whose office usually represents all defendants in such cases, may be in a position to alert the Courts of the pendency of such a related group of cases, and to move, subject to the sound discretion of the District Court, for consolidation.

We have considered the other issues raised by Leonard and his counsel. The findings of the District Court are not clear-

ly erroneous, and no error of law has been committed. The judgment is affirmed.