**Adrian Bruce TISDALE, Appellant,**

v.

**Ronald DOBBS, Warden; Dewie Williams, Administrator Chaplaincy Services; Lieutenant Davis, Tucker Unit; and A.L. Lockhart, Director, Arkansas Department of Correction, Appellees.**

No. 85–2352.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1986.

Decided Dec. 19, 1986.

---

Greg Jones, Little Rock, Ark., for appellant.

Sandra Johnson-Buchanan, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before HEANEY, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Adrian Bruce Tisdale appeals from the district court's[1] entry of summary judgment against him on his claim that officials of the Arkansas Department of Correction denied him and other Muslim inmates the right to free exercise of their religion by refusing to allow them to conduct religious services except under the leadership of an approved free-world sponsor and by providing Muslim inmates an inadequate sack lunch following the daily Ramadan fast. The district court found that these regulations were applied equally to all inmates, and held that they were not discriminatory and were a reasonable response to legitimate security considerations. It concluded that the regulations did not violate Tisdale's constitutional rights. On appeal, Tisdale argues that the district court erred in failing to determine whether the group worship regulation was more restrictive than necessary, in relying on conclusory affidavits submitted by the prison officials, and in failing to determine whether the challenged regulations had an impermissible discriminatory impact on Muslims and interfered with their observance of Ramadan. We affirm.

Tisdale, an inmate at the diagnostic unit of the Arkansas Department of Correction, filed this action pro se to enjoin certain prison officials from violating his constitutional right to free exercise of religion. Tisdale is a Muslim. He challenged the establishment and application of a regulation that prohibits groups of inmates from holding religious services unless a free-world sponsor is present and in charge. The officials were unable to obtain a Muslim to act as free-world sponsor and enforcement of the regulation foreclosed the Muslims from holding group prayer meetings, including their weekly Jumah prayer meetings. He also alleged harassment, retaliation, and discrimination arising from the prison's policy of providing Muslims who were forced to miss regularly sched-

uled meals during the fast of Ramadan with sack lunches consisting of two bologna sandwiches after fourteen hours of fasting.

The officials of the Department of Correction moved for summary judgment and submitted supporting affidavits. A.L. Lockhart, Director of the Arkansas Department of Correction, stated in his affidavit that the requirement of the presence of a free-world sponsor at all worship services applied to all religious groups and was not intended to discriminate against Muslims. He further stated that "[t]he importance of the enforcement of this rule was underscored in July of 1984 when Muslim services at Cummins were used as a forum for advocating institutional mutiny." Designated Record at 11. On that occasion, the Arkansas state police had to assist in maintaining security. Dewie Williams, Administrator of Chaplaincy Services, stated that Muslims would be allowed to assemble for group services if they did so at proper times and with an approved free-world person present and in charge of the meeting. He stated the Department had made efforts to get an American Muslim mission to have someone present for the Jumah meetings, but had been unsuccessful. Warden Ronald Dobbs stated that worship services were permitted on scheduled dates and times and with an approved free-world person present and in charge. This requirement, he stated, is not intended to discriminate against any religious group and is based on security considerations. He also stated that those inmates participating in Ramadan, which entails fasting during daylight hours, are given the same sack lunches as any other inmate who is unable to go to the cafeteria at the regularly scheduled times.

In answer to the motion and affidavits, Tisdale filed a sworn response stating that the officials were trying to justify oppression, harassment, and denial of Islamic religious worship in alleging that the Muslim

---

1. The Honorable William Ray Overton, United States District Judge for the Eastern District of Arkansas.

meetings were a security risk. He stated that the Department and the Chaplaincy Service were "sorting out" the Muslim inmates, and were biased against Muslims because of the "conflict" between Christianity and the Muslim faith. Tisdale also stated that Muslim inmates observing Ramadan were given two bologna sandwiches nightly to break their fast and that this was a departure from the Department's former policy of providing food "from a food cart." He alleged that this diet was nutritionally insufficient and that some Muslims were vegetarians and could not eat the sandwiches.

The district court granted the motion for summary judgment. *Tisdale v. Dobbs,* PB–C–85–343 (E.D.Ark. Oct. 25, 1985). It found that the requirement that a free-world person be present at all religious group services applied to all groups and was not discriminatory. It further found that it was "a reasonable response to a legitimate security consideration in light of prior abuses of the assembly privilege." *Id.* at 2. It observed that the Department of Correction had made efforts to provide a sponsor for the Jumah meetings, and it noted that the regulation did not affect any aspects of the Muslim faith other than the Jumah meetings. It concluded that the regulation did not violate Tisdale's constitutional rights. With regard to Tisdale's allegation that the sack lunches provided Muslims during Ramadan were inadequate, it found that this policy was also applied evenhandedly to all inmates who missed meals. It concluded that this complaint "[did] not rise to the level of constitutional significance." *Id.* at 3.

Tisdale filed a separate motion for appointment of counsel. It was denied. This court appointed counsel to assist Tisdale with his appeal.

■ We turn our attention first to Tisdale's claim that the district court abused its discretion in denying his motion for appointment of counsel. He argues, citing *Sours v. Norris,* 782 F.2d 106 (8th Cir. 1986), that when a colorable claim of constitutional violation is presented, the trial court is under a mandatory duty to appoint counsel. We have recently clarified and re-stated the considerations which should inform the exercise of a trial court's discretion in granting or denying a motion to appoint counsel in a civil suit such as this one. *See In re Lane,* 801 F.2d 1040, 1042–44 (8th Cir.1986) (factual complexity, ability of prisoner to investigate facts, existence of conflicting testimony, ability to present claims, and complexity of legal issues are all factors to be weighed by trial court); *see also Johnson v. Williams,* 788 F.2d 1319, 1322–23 (8th Cir.1986); *Nelson v. Redfield Lithograph Printing,* 728 F.2d 1003, 1005 (8th Cir.1984). Our cases hold that there is no mandatory duty to appoint counsel in a civil suit. *E.g., Lane,* at 1043. Tisdale, therefore, had no "right" to appointed counsel before the district court, and we conclude that the district court did not abuse its discretion in denying his request for one. The factual allegations in this case are not complex, and were well set forth by Tisdale in his complaint. He also concedes that the legal issues are neither particularly novel nor complex. Opening Brief for Appellant at 12. Moreover, his contentions have been vigorously and ably presented to us by appointed counsel on appeal.

With respect to the requirement that a free-world sponsor be present at group religious services, we draw guidance from a number of our recent decisions. In *Hill v. Blackwell,* 774 F.2d 338 (8th Cir.1985), we set out in detail the legal analysis and considerations applicable to Tisdale's claim. In *Hill,* we considered a regulation preventing inmates at the Missouri State Penitentiary from growing beards. The wearing of facial hair, including beards and mustaches, is a practice of the Muslim religion. *Id.* at 339. We stated that the burden is on the prisoner to show that his belief is religious in nature and sincerely held. *Id.* at 342. He must also show that the challenged regulation infringes upon that belief. *Id.* at 342–43. On the other hand, the responsible prison officials need only show that the exercise of the religious

practice "could create a potential threat to a legitimate penological objective." *Id.* at 343. If this showing is made, the trial court must defer to the prison officials' expertise in matters of prison administration, and "the prisoner's right must yield to the prison regulation." *Id.* If, however, the record contains substantial evidence that the officials' belief that the regulation is necessary is unreasonable, or that their response to the penological objective is exaggerated, the district court need no longer defer but rather must determine on the record whether the officials have shown that the regulation is justified. *Id.; see also Gregory v. Auger,* 768 F.2d 287, 290–91 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 601, 88 L.Ed.2d 580 (1985).

We also employed this two-part standard in *Otey v. Best,* 680 F.2d 1231 (8th Cir. 1982), in which we considered the constitutionality of a regulation that prohibited prisoners in administrative segregation and prisoners subject to the death penalty from attending Jumah prayer meetings. We quoted approvingly a portion of the Third Circuit's opinion in *St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir.1980), which explicitly placed on the prisoner the burden of proving by substantial evidence that the prison officials exaggerated their response to security considerations or that their belief is unreasonable. *Otey,* 680 F.2d at 1233 (quoting *St. Claire,* 634 F.2d at 114–15). This passage from *St. Claire* was also re-peated and re-emphasized in *Hill,* 774 F.2d at 342.

We recently considered, in *Little v. Norris,* 787 F.2d 1241 (8th Cir.1986), another regulation impinging on group prayer meetings. The plaintiff was not permitted to participate in group religious meetings after he was involved in a potentially violent group demonstration. We affirmed the district court's entry of summary judgment in favor of the prison officials. The officials had identified a legitimate security

concern as the basis of the regulation—the prevention of any further demonstrations during a period of inmate unrest. The prisoner failed to meet his burden under the standard articulated in *Hill* because "[he] never alleged in his complaint, or in his response to defendant's motion to dismiss, that the prison officials exaggerated their response to the security consideration." *Id.* at 1244. Moreover, the prisoner did not allege that the prison official's concern for safety was unwarranted. We held that the prohibition of attendance at group religious services was a reasonable limitation on the prisoner's right to freedom of religion and there was no violation of his constitutional right. *Id.*

██ We do not believe the district court erred in its application of the principles developed in these cases to Tisdale's claim. The court concluded that the requirement of a free-world sponsor was a reasonable response to legitimate security considerations—the threat of unsupervised group prayer meetings becoming forums for dissension and unrest as had previously occurred at the Cummins Unit in 1984. Phrased in terms of the two-part standard articulated in *Hill,* the prison officials produced evidence that the unfettered exercise of Tisdale's first amendment right would create a potential danger to institutional safety, and the district court found that the prison officials' opinion as to this potential threat and the necessity of the regulation was "sincerely held and arguably correct." [2] *Hill,* 774 F.2d at 344. Tisdale then had the burden of showing by substantial evidence that the officials' belief was unreasonable or that their response to legitimate security considerations was exaggerated. Absent such a showing, "the district court was obligated to defer to the expert judgment of the prison officials." *Id.* The district court implicitly concluded that Tisdale had not met this heavy burden,

---

**2.** The prison officials do not dispute, and we accept, that the Jumah prayer meeting is a Muslim religious practice, and that Tisdale is sincere in his adherence to the Muslim faith and its observances. Moreover, the prison officials do not seriously dispute that the challenged regulation infringes on that practice to the extent that no free-world sponsors for the Jumah meetings have yet been found and thus the meetings cannot take place.

and appropriately deferred to the expert opinion of the prison officials. As Tisdale failed to meet his burden under the first part of the *Hill* standard, it was not necessary for the court to reach the second part of the analysis and "determine on the record whether the prison officials have indeed shown that the restrictive regulation is justified." *Id.* at 343.

Our opinion in *Little v. Norris, supra,* demonstrates that this analysis does not change if the parties' contentions and the facts are presented to the district court in the form of a motion for summary judgment with supporting and opposing affidavits rather than through a trial. As in *Little,* 787 F.2d at 1243, the prison officials have admitted the existence of the challenged regulation and have articulated a legitimate penological objective on which it is based. And, again as in *Little,* "[Tisdale] never alleged in his complaint, or in response to the defendants' motion [for summary judgment], that the prison officials exaggerated their response to the security consideration * * * [or] that defendants' concern for security was unwarranted." *Id.* at 1244. The closest Tisdale comes to such an allegation is the statement contained in his response to the motion for summary judgment that the officials' articulated penological objective is "to justify the religion being oppressed." This general, conclusory allegation neither begins to satisfy the heavy burden required of Tisdale under *Hill* nor does it meet our requirements for a response to a motion for summary judgment supported by affi-

davits under Rule 56 of the Federal Rules of Civil Procedure. *See Johnson v. Nix,* 754 F.2d 273, 274 (8th Cir.1985) (prisoner's pro se response to summary judgment motion inadequate because conclusory and disputed only immaterial facts); *Miller v. Solem,* 728 F.2d 1020, 1025–26 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984) (same); *Cummings v. Roberts,* 628 F.2d 1065, 1069 (8th Cir.1980) (same). Tisdale's response simply was inadequate to establish an issue of fact or law requiring further balancing by the district court.

What we have said thus far answers Tisdale's first allegation of error by the district court. He contends that the court should have determined whether the group worship regulation was more restrictive than necessary to meet the security consideration. He cites no authority for this proposition. However, such a determination should be made, if at all,[3] during the second part of the two-part *Hill* analysis in deciding whether the prison officials have shown the regulation to be justified. The district court did not reach this stage of the analysis because Tisdale did not meet his burden at the first stage.

Tisdale next complains that the district court erred in granting summary judgment based on what he contends are fatally deficient affidavits. He argues that the affidavits submitted by Lockhart, Williams, and Dobbs were conclusory, and could not support the entry of summary judgment. He cites and relies on the Sixth Circuit's opin-

---

**3.** We explicitly rejected a "less restrictive alternative" analysis when considering a regulation that prohibited Muslim inmates from wearing robes and prayer caps in *Rogers v. Scurr,* 676 F.2d 1211, 1215–16 (8th Cir.1982). In *Hill,* however, we cited our opinion in *Teterud v. Burns,* 522 F.2d 357 (8th Cir.1975), for the proposition that "a regulation which is more restrictive than necessary to meet institutional objectives * * * will be struck down." *Hill,* 774 F.2d at 341 (quoting *Teterud,* 522 F.2d at 359). We then distinguished *Teterud* from *Hill* by noting that no legitimate security consideration was advanced for the challenged regulation in *Teterud,* so there was no need to proceed with the full *Hill* analysis. If there is confusion on this issue among our prior decisions, *see also Safley v.*

*Turner,* 777 F.2d 1307, 1313 (8th Cir.1985) (approving a "strict scrutiny"-"narrowly tailored" analysis of prison regulation impinging on right to free speech); *Gregory,* 768 F.2d 287 at 289 (the district court must "determine whether the limitation of first amendment freedoms is no greater than necessary or essential to the governmental interest involved"), we decline to resolve it until we are presented with a case more squarely raising this question. We are satisfied that Tisdale was not entitled to a determination of whether the breadth of this regulation was appropriate because he did not present substantial evidence that the prison officials' belief was unreasonable or that their response to the security consideration was exaggerated.

ion in *Weaver v. Jago*, 675 F.2d 116 (6th Cir.1982). The *Weaver* court observed that the allegations contained in the defendants' affidavits were conclusory in reciting that a hair length regulation was necessary for purposes of identification, security, and hygiene. *Id.* at 118. However, the thrust of the court's opinion was not that the affidavits were inadequate, but that they did not meet squarely the allegations in the prisoner's complaint, and further factual development was necessary to properly assess his claims.

■ The affidavits submitted by Lockhart, Williams, and Dobbs meet each of the complaints raised by Tisdale. Moreover, the officials did not simply assert that the challenged regulation is justified by a concern for security. Lockhart identified a specific incident that prompted the adoption of the group religious service regulation, the use of Muslim services at the Cummins Unit in 1984 as "a forum for advocating institutional mutiny." Designated Record at 11. All three affidavits note that this regulation applies to all religious groups and not merely to Muslims. Williams stated that efforts were being made to find a Muslim free-world sponsor for the meetings. We think that these affidavits, while not models, are adequate to show that unsupervised group religious meetings posed a potential threat to a legitimate penological objective. In this regard we are mindful of the Supreme Court's admonition that prison officials are not to be required to show that the activity controlled by the challenged regulation is a "present danger to security and order," *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) (quoting *North Carolina Prisoners' Labor Union v. Jones*, 409 F.Supp. 937, 945 (E.D.N.C.1976), *rev'd*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)), but rather that there is a *potential* threat to institutional security. This standard, we conclude, has been met.

■ Tisdale next argues, again without citation of authority, that the group religious service regulation had an imper-missible discriminatory impact on Muslims, and that the district court erred in failing to so find. He also argues that the enforcement of this regulation against Muslims, coupled with the provision of Christian chaplains for Christian religious services, constitutes an establishment clause violation. Tisdale did not raise an equal protection or establishment clause claim in his complaint or in his response to the motion for summary judgment, however, and we decline to consider these claims for the first time on appeal. *Little*, 787 F.2d at 1243 n. 4. We have reviewed the record, in any event, and we find no factual support for the contentions Tisdale makes in his brief. Although the Arkansas Department of Correction is obligated to afford Tisdale a reasonable opportunity to practice his faith, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Rogers*, 676 F.2d at 1215, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081 n. 2.

■ Tisdale's final claim is that the district court erred in summarily concluding that his complaint regarding the provision of bologna sandwiches to Muslim inmates during Ramadan "[did] not rise to the level of constitutional significance." *Tisdale*, slip op. at 3. We conclude that the district court did not err in so finding. The affidavits submitted by the prison officials stated that Muslim inmates were given the same meal as was given any other inmate who missed a meal during the day. Tisdale's response did not contest the accuracy of this statement. We think that the Arkansas Department of Correction has provided Muslim inmates a "reasonable opportunity," *Otey*, 680 F.2d at 1233 (quoting *Rogers*, 676 F.2d at 1215), to observe Ramadan by furnishing them a sack lunch equal to that given other inmates who miss scheduled meals. Tisdale has not alleged that he cannot eat the meals provided him because he is a vegetarian, or that as a Muslim, he

cannot eat bologna because it is made of pork. Under these circumstances, the district court properly found that Tisdale's allegations did not amount to a constitutional violation.

We affirm the judgment of the district court.