USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1459 MICHAEL KEVIN DUPONT, Plaintiff, Appellant, v. LARRY E. DUBOIS, COMMISSIONER OF CORRECTIONS, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Michael Kevin Dupont on brief pro se. ____________________ Nancy Ankers White, Special Assistant Attorney General, and David __________________ _____ J. Rentsch, Counsel, Department of Correction, on brief for appellees. __________ ____________________ November 6, 1996 ____________________ Per Curiam. Michael Kevin DuPont appeals from the __________ district court's denial of preliminary injunctive relief.1 1 We affirm, without prejudice to his right to seek certain relief anew in the district court, as is explained below.  A. Background __________ DuPont is incarcerated at MCI-Cedar Junction in Massachusetts. In 1992, he filed a pro se civil rights ___ __ action against various Department of Corrections personnel and others, seeking damages and injunctive relief under 42 U.S.C. 1983. Among other things, he alleged that defendants had violated his rights by using excessive force against him, seizing his legal materials, denying him medical care, and threatening to confine him in a disciplinary unit. At the time he filed his complaint, DuPont was in the Departmental Segregation Unit (DSU), but he was later placed in the Departmental Disciplinary Unit (DDU), where he remains.  In this appeal, DuPont challenges the district court's denial of his request for an injunction ordering compliance with certain stipulations, agreements, or orders in the following cases: Cepulonis v. Fair, D. Mass., No. _________ ____ 78-3233-Z; Stone v. Boone, D. Mass., No. 73-1083-T; Alston v. _____ _____ ______  ____________________ 1The court accepted a magistrate's report recommending 1 denial of some of his requests for relief in an order dated August 3, 1995, and summarily denied other requests in an order dated March 13, 1996. DuPont appeals from those two orders. -2- Fair, D. Mass., No. 77-3519-G; Hoffer v. Fair, S.J.C. No. 85- ____ ______ ____ 71; and DuPont v. Hall, Norfolk Super. Ct. No. 87-1399. He ______ ____ also objects to the court's denial of his requests for injunctions forbidding the use of chemical agents or excessive force against him, forbidding his placement in a strip cell, directing the return of postage stamps taken from his incoming mail and the return of certain legal materials, and directing his release from the DDU. B. Discussion __________ If the district court has made no clear error of law or fact in its ruling on a preliminary injunction motion, we will not disturb its conclusion absent manifest abuse of discretion. See Cohen v. Brown University, 991 F.2d 888, 902 ___ _____ ________________ (1st Cir. 1993). For the reasons outlined below, we find that the district court did not overstep its bounds in denying the requested relief. Consent Decree Violations. In part, DuPont seeks __________________________ orders enforcing federal or state court consent decrees, but such relief is unavailable in an individual action under 42 U.S.C. 1983. See Martel v. Fridovich, 14 F.3d 1, 3 n.4 ___ ______ _________ (1st Cir. 1993).2 2  ____________________ 2On appeal, DuPont presents a new claim that his placement 2 in the DDU breached a settlement agreement in DuPont v. Fair, ______ ____ Plymouth Super. Ct. No. 89-0105-B, but that claim would also be barred under Martel. ______ -3- State Law Violations. DuPont also asserts various ____________________ state law violations, e.g., that defendants have not properly promulgated certain DDU rules, did not medically screen him before placing him in the DDU, and have not provided certain law library access, all in violation of state statutes or regulations. But he does not explain how defendants thereby violated federal law, and this court does not have the power to direct state officials to comply with state law. See ___ Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st _____________________ ____________ Cir. 1992) (citing Pennhurst State Sch. and Hosp. v. ___________________________________ Halderman, 465 U.S. 89, 106 (1984)). _________ Court Access. DuPont complains that defendants _____________ violated his right to court access by restricting his ability to conduct legal research3 and by seizing legal materials 3 from his cell. DuPont has clearly been able to challenge his criminal conviction and sentence by filing a direct appeal and post-conviction motions in state court and by filing two habeas petitions (and appeals from the dismissal thereof) in federal court. He has also been able to file and prosecute this action challenging the conditions of his confinement. Nothing in the record indicates that DuPont's access to the courts has not been adequate or meaningful. Consequently, he  ____________________ 3According to DuPont, he may not physically use the 3 prison's law libraries, but must submit written requests for xeroxed copies of legal materials and give exact citations for such materials, and he has no access to softcover advance sheets. -4- has not suffered the "actual injury" required to show a violation of his right to meaningful court access. See Lewis ___ _____ v. Casey, 116 S. Ct. 2174, 2180-82 (1996). _____ Liberty Interests. DuPont asserts that defendants _________________ have violated his due process liberty interest in law library access and in not being confined in the DDU by their failure to comply with obligations imposed in the cases cited in the beginning of this opinion. Contrary to DuPont's claim, however, the Alston case did not require defendants to ______ prepare and evaluate a health status report before placing him in the DDU, which is located at Cedar Junction as is the DSU where he was previously housed. Alston requires the ______ preparation and review of health status reports only before an inmate is transferred to an entirely different institution. Likewise, Stone does not clearly grant DuPont _____ the right to physically use the prison law library. It requires that all inmates have supervised access to the law library unless "special circumstances" dictate otherwise. Such circumstances may well encompass DuPont's confinement in the DDU.  DuPont v. Fair and the Hoffer and Cepulonis cases ______ ____ ______ _________ relate only to inmates in the DSU, but DuPont alleges that ___ they apply because the DDU is really a pretextual DSU. DuPont's arguments on this point are not persuasive. The affidavit by defendant DOC Commissioner Dubois to which he -5- points affirmed that the DDU is distinct from the DSU in its ________ __ disciplinary purpose. The list of comparisons between the DSU and DDU which DuPont submitted to the district court actually describes significant differences between the two units. Finally, while the DDU may have effectively replaced the DSU at Cedar Junction, Commissioner Dubois testified in a deposition in a different case (which is in the record before us) that he did not establish the DDU in order to evade legal obligations applicable to the DSU.  In his objections to the magistrate's report, DuPont raised an argument based on Sandin v. Conner, 115 S. ______ ______ Ct. 2293 (1995), which had just then been decided, and which the district court did not discuss in its opinion accepting the report and recommendation. DuPont asserts that confinement in the DDU is an atypical and significant deprivation, giving him a due process liberty interest under Sandin, which defendants violated when they put him in the ______ DDU. The present record does not contain sufficient information to permit evaluation of this claim.4 For that 4 reason, a remand to consider the Sandin claim makes no sense. ______ Accordingly, we affirm the denials below on the basis of the  ____________________ 4We note, too, that DuPont has asked us to send certain 4 materials on file in this court which are relevant to his Sandin claim to the district court, a request which we hereby ______ grant. The materials were filed in connection with a previous appeal by DuPont in this case, but were never filed in the district court. -6- arguments originally presented to the district court, but do so without prejudice to DuPont's right to seek preliminary injunctive relief anew based on Sandin. We remind him, ______ however, that the district court has directed him to comply fully with Loc. R. 7.1 in filing motions and supporting memoranda in that court, and that district courts "are entitled to demand adherence to specific mandates contained in the [local] rules." See Air Line Pilots Ass'n v. ___ ________________________ Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. _______________________________ 1994). Equal Protection. On appeal, DuPont asserts that ________________ the particular law library access restrictions placed on him as a DDU inmate violate his equal protection rights because other inmates in "disciplinary segregation," i.e., inmates in the "locked down max end and segregation blocks 9 and 10," have greater library access. This bare allegation does not establish that the inmates he refers to are situated similarly enough to DDU inmates to require similar law library rights. See Hosna v. Groose, 80 F.3d 298, 304 n.8 ___ _____ ______ (8th Cir.) (the district court should not presume that inmates in administrative segregation for their own protection are necessarily similarly situated with protective custodyinmates), cert.denied,1996 WL375894(U.S. Oct.7,1996).5 5 ___________  ____________________ 5On appeal, DuPont asserts a new claim that defendants' 5 failure to provide DDU inmates with the 90-day periodic review and early release options given DSU inmates violates -7- Mail Rights While in Strip Cell. On three _____________________________________ occasions in 1994, defendants put DuPont in a strip cell for periods ranging from four to eleven days, during which time DuPont's incoming mail was allegedly withheld and he was also denied writing materials. We evaluate the withholding of incoming mail under Turner v. Safley, 482 U.S. 78, 89 (1987), ______ ______ see Thornburgh v. Abbott, 490 U.S. 401, 413 (1989), and the ___ __________ ______ restriction on outgoing mail (i.e., the denial of writing materials) under Procunier v. Martinez, 416 U.S. 396 (1974). _________ ________ Because the withholding of mail was reasonably related to legitimate penological interests and the restriction on outgoing mail furthered a substantial governmental interest unrelated to the suppression of expression and was no greater than necessary, we find no constitutional violation. DuPont was placed in a strip cell due to intransigence sufficiently serious to require the use of chemical agents. Restricting his mail privileges helped the state maintain order and security in the DDU by ensuring that unpleasant consequences flowed from such misbehavior. See, e.g., Little v. Norris, ___ ____ ______ ______ 787 F.2d 1241, 1243-44 (8th Cir. 1986) ("The purpose of withholding personal mail is to make punitive isolation unpleasant, and thereby discourage improper behavior and  ____________________ his equal protection rights. As noted above, DuPont's own list comparing the DSU and DDU suggests that there are significant differences between the two units. Since DSU and DDU inmates do not seem to be similarly situated, his claim seems unlikely to be successful. -8- promote security within the prison."). Given the limited privileges of DDU inmates, which must be earned, defendants may have had few other alternatives for inducing persistently disobedient inmates like DuPont to behave. Moreover, the withdrawal of mail privileges was temporary. DuPont was given his mail and permitted to write letters after leaving the strip cell. His confinement was also relatively short in duration, lasting 11 days or less. The restriction was content neutral, applying to all incoming and outgoing correspondence. DuPont was permitted attorney visits and his attorney could keep him informed about pending cases. He has not asserted the actual loss of any cause of action due to ____ his inability to write letters or draft legal documents while confined in the strip cell. Incoming Stamps. Defendants have removed stamps ________________ from DuPont's incoming mail, citing a DDU rule prohibiting the receipt of stamps through the mail and requiring DDU inmates to buy stamps at the prison canteen. DuPont avers that he did not have enough money in his prison account to buy stamps. But his correspondents who desire to send him stamps may donate funds to his prison account for that purpose, instead. See 103 Code Mass. Regs. 405.16. The ___ prison also provides some free postage for personal mail and unlimited postage for necessary mail to court officials and attorneys. Id. 481.10. Under the circumstances, we find ___ -9- no constitutional violation. See Kaestel v. Lockhart, 746 ___ _______ ________ F.2d 1323, 1325 (8th Cir. 1984) (per curiam) (prison could prohibit the receipt of postal stamps through incoming mail in order to prevent inmates from using them as a source of currency outside their regular prison accounts; inmates could obtain pre-stamped envelopes from the commissary and some funds were available for postage for indigent inmates) (applying Procunier standard); accord Pacheco v. Comisse, 897 _________ ______ _______ _______ F. Supp. 671, 682 (N.D.N.Y. 1995) (applying Turner standard). ______ Seizures of Legal Materials. DuPont objects to ___________________________ defendants' seizure of legal materials from his cell. Contrary to his assertions, however, the settlement agreement in DuPont v. Hall, supra, did not give him the right to keep ______ ____ _____ 12 cubic feet of legal materials in his DDU cell or the right to select materials to keep in his cell before excess ______ materials were removed and placed in storage. The prison's property limit regulation expressly permitted him to keep no more than 1 cubic foot of legal materials in his cell, see ___ 103 Code Mass. Regs. 403.09, and so defendants could remove materials exceeding that limit. The regulation in question is not arbitrary or unreasonable simply because the federal prison system has a more generous property limit. See Savko ___ _____ v. Rollins, 749 F. Supp. 1403, 1407-8 (D. Md. 1990), aff'd, _______ _____ 924 F.2d 1053 (4th Cir. 1991) (table). Finally, defendants' -10- seizures of his excess materials have not caused any actual injury to his right of court access, as is indicated above.6 6 Excessive Force. DuPont seeks an injunction _______________ against defendants' use of chemical agents when removing excess legal materials from his cell, alleging that they have used excessive force and chemical agents against him on multiple occasions from 1991 to 1994. The record indicates that chemical agents and/or forced move teams have been used against DuPont some 14 times in that time period after he has refused to obey orders or rules. He may be able to convince a jury that excessive force was used against him on February 14, 1994, as he asserts, but that injury could be remedied through a damages award. See Cohen, supra, 991 F.2d at 902 ___ _____ _____ (the availability of adequate damages may justify denying preliminary injunctive relief). On practically all other occasions when chemical agents were used against him, DuPont reported no injuries and medical personnel observed none. On a few occasions, he reported old or minor injuries. Prison officials sought medical authorization before using chemical agents on DuPont and his eyes and face were washed after their use. We conclude, therefore, that defendants have not  ____________________ 6DuPont also sought the return of particular materials 6 removed from his cell in July 1994. He may review his stored materials to obtain the particular documents he wants, however, but has declined to do so. -11- systematically used excessive force or improperly used chemical agentsso asto justify preliminaryinjunctive relief.7 7 Use of Strip Cells. DuPont alleges that the _____________________ conditions in the strip cell in which he was occasionally confined in 1994 violated the Eighth Amendment. Even assuming that the conditions he describes were sufficiently serious deprivations to establish a constitutional violation, DuPont has not shown facts to indicate that any named defendant knew of and disregarded an excessive risk to his safety. Thus, he has not shown the requisite "deliberate indifference" to warrant any relief, at this time, on an Eighth Amendment claim. See Farmer v. Brennan, 114 S. Ct. ___ ______ _______ 1970, 1977 (1994); Williams v. Delo, 49 F.3d 442, 446-47 (8th ________ ____ Cir. 1995) (denying injunctive relief to an inmate confined in a strip cell since he had not shown that any named defendant had known of and disregarded any excessive risk to  ____________________ 7On appeal, DuPont objects to the district court's refusal 7 to compel discovery to permit him to identify the guards who allegedly used excessive force against him. We note that discovery orders are not generally appealable prior to entry of final judgment. See 9 Moore's Federal Practice  ___ __________________________ 110.13[2], at 132 (2d ed. 1996). In addition, our affirmance does not rest on the ground that DuPont failed to identify the guards in question, although that reason was cited by the district court in denying preliminary injunctive relief. Therefore, we decline to consider the district court's failure to compel discovery in this appeal. See Coastal ___ _______ Fuels of Puerto Rico v. Caribbean Petroleum Corp., 990 F.2d _____________________ __________________________ 25, 28 (1st Cir. 1993) (declining to review the lower court's decision on an issue on which the denial of preliminary injunctive relief did not depend where the decision was not immediately appealable). -12- his health or safety). DuPont filed a grievance about conditions in the strip cell with defendant DDU Director Harrington, but not until after his release from the strip _____ cell.  Transfer of Materials to District Court. We hereby _______________________________________ grant DuPont's request that we send certain First Circuit materials to the district court. Affirmed, without prejudice to appellant's right to ___________________________________________________ raise a new claim for preliminary injunctive relief in the _____________________________________________________________ district court based on Sandin v. Conner, 115 S. Ct. 2293 _____________________________________________________________ (1995). The clerk of this court is hereby directed to send _____________________________________________________________ to the district court the materials filed in No. 93-2119 _____________________________________________________________ which are identified by appellant in his appellate brief. __________________________________________________________ -13-