Harold LaMont OTEY, Appellant,

v.

Donald BEST, Acting Director; Robert Parratt, Warden, Appellees.

No. 81–2222.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1982.

Decided June 23, 1982.

money back out of the bank." The check was drawn on Macalusa's business bank account.

Berry, Anderson, Creager & Wittstruck, Robert B. Creager, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen., J. Kirk Brown, Asst. Atty. Gen., Lincoln, Neb., for Donald Best and Robert Parratt, appellees.

Before ROSS, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Appellant Harold LaMont Otey, an inmate at the Nebraska State Penitentiary under a sentence of death, brought an action against prison officials under 42 U.S.C. § 1983, alleging that a prison regulation prohibiting inmates subject to the death penalty from attending corporate worship services[1] impermissibly infringed on his first amendment right to free exercise of religion. After a trial to the district court[2] upon stipulated facts, the court entered judgment in favor of appellees. We affirm.

Appellant, who resides in an administrative segregation unit known as "F" Gallery, is a member of the Muslim (Islamic) faith. He requested permission to attend a weekly Jumah prayer service in the penitentiary chapel with other adherents of Islam in the general inmate population. His request to participate in Jumah prayer, which is an integral part of the Muslim faith, was denied on the basis of the challenged regulation. Appellant, however, has been allowed visits by a Muslim Imam (religious leader) and has been provided with special meals during the holy month of Ramadan, requested religious literature, and national Muslim broadcasts.

On appeal appellant advances three grounds for reversal. He initially asserts that the district court erred in failing to apply a strict scrutiny standard of review when it assessed the constitutionality of the Nebraska prison regulation. In addition, he disputes the court's finding that prison officials established that allowing inmates under a sentence of death to mingle with the general prison population would create a considerable security risk. Finally, appellant contends that the trial court erred in denying his motion for a new trial. We address each of these contentions in turn.

■ Turning our attention to appellant's first point on appeal, we conclude that the district court applied the proper standard in reviewing the prison regulation at issue. In

---

1. Nebraska Department of Correctional Services Rule 6(14)(a) vii provides:

    An adult offender may be placed in administrative detention ... for the following reasons:

    \*   \*   \*   \*   \*   \*

    Adult offenders sentenced to death penalty. Additionally, Penitentiary Post Orders regulating the custody of prisoners under a sentence of death state:
    Before any death penalty offenders, administrative segregation unit, 'F' Gallery, ... are permitted to move about the institution, the areas where they are permitted to move *WILL BE CLEARED OF THE GENERAL POPULATION* ....
    The Post Orders further provide:
    Death penalty offenders assigned to 'F' Gallery will not go to religious services. Religious counseling will be provided to the offender requesting such to the religious department on an interview request form. The Chaplain/Minister will schedule a time to visit the offender ....

2. The Honorable Warren K. Urbom, Chief Judge, United States District Court, District of Nebraska.

determining the threshold question of the appropriate standard the trial court relied on *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir. 1980), in which the court addressed, *inter alia*, the validity of a prison policy prohibiting inmates residing in segregated units from attending religious services. The court in that case articulated a standard of review derived from a sound reading of the decisions in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), and *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). It stated:

> [Prison officials need] only to produce evidence that to permit the exercise of first amendment rights would create a potential danger to institutional security.... Once the state has met its burden of going forward with the evidence, the courts must defer to the expert judgment of the prison officials unless the prisoner proves by 'substantial evidence ... that the officials have exaggerated their response' to security considerations, *Pell*, 417 U.S. at 827, 94 S.Ct. at 2806, or that their beliefs are unreasonable, *Jones*, 433 U.S. at 128, 97 S.Ct. at 2539.

*St. Claire v. Cuyler*, 634 F.2d at 114–15.

Our recent opinion in *Rogers v. Scurr*, 676 F.2d 1211 (8th Cir. 1982), also discusses the appropriate standard for reviewing prison regulations concerned with the preservation of order and security within the prison. In *Rogers* the district court ordered correctional authorities to adopt a less restrictive alternative to a policy prohibiting Muslim inmates from wearing prayer caps and robes outside prayer services despite its finding that the prohibition was " 'a reasonable method of preventing the concealment of contraband.' " *Id.*, at 1215. In rejecting the test employed by the court we stated:

> While in general we agree with the district court that limitations on [first amendment] rights should be no greater than necessary to protect the governmental interest involved, *Procunier v. Martinez*, 416 U.S. 396, 413 [94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), we believe that, especially when the maintenance of institutional security is at issue, prison officials ordinarily must have wide latitude within which to make appropriate limitations. In this instance, the prison officials have explained the purpose of their policy of prohibiting the wearing of caps and robes outside prayer meetings; they urge that such attire makes it too easy to conceal contraband. We find this explanation eminently reasonable, particularly in view of the fact that operating personnel is limited.

*Id.* at 1215. We also quoted with approval from *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 863 (4th Cir. 1975):

> 'Prison authorities ... may adopt any regulations dealing with the exercise by an inmate of his religion that may be reasonably and substantially justified by considerations of prison discipline and order. So long as the prison authorities provide the inmate with a reasonable opportunity for the exercise of his religious tenets in a form that is substantially warranted by the requirements of prison safety and order, there is no violation of the inmate's constitutional rights.'

*Rogers v. Scurr*, at 1215; *see Sharp v. Sigler*, 408 F.2d 966 (8th Cir. 1969). In light of our decision in *Rogers* and the other cases, we conclude that the district court did not err in refusing to apply a strict scrutiny standard when it assessed the constitutionality of the Nebraska prison regulation.[3]

---

**3.** To a large extent, appellant relies on a distinction between the facts of *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir. 1980), and those of the instant case. He contends that the Nebraska regulation prohibiting an entire class of inmates from attending group worship services should be more rigorously scrutinized than the *St. Claire* prohibition against wearing religious headgear in prison dining halls. This contention is based on the premise that participation in religious services is a significant tenet of Islam whereas wearing religious headgear is incidental to the exercise of the Muslim faith.

Whatever merit this argument may have in another context, in the circumstances of this case it is of no consequence. In general, all

■ Appellant also challenges the district court's finding that the restriction on the right of free exercise was based upon a justifiable concern for institutional security. We reject appellant's challenge in this regard.

The district court's finding that permitting F Gallery inmates to attend religious services with the general inmate population would create a potential security danger is well supported by the evidence. The testimony of Warden Robert Parratt, a twenty-five year veteran of the correctional system, reflected the considerations underlying the regulation at issue, namely, the difficulty of disciplining inmates under a sentence of death and increased escape attempts and destructive behavior resulting from a fatalistic attitude. The Warden stated that these problems increased in intensity during a one year experiment in which prison officials attempted to integrate F Gallery inmates into the general prison population. In addition, he noted that the routine nature of attendance at Jumah prayer services afforded a greater opportunity to carry out escape plans. Appellant did not adduce any evidence to demonstrate that the regulation prohibiting F Gallery inmates from attending corporate worship services was an exaggerated response to concerns of institutional security. *See St. Claire v. Cuyler*, 634 F.2d at 115. In these circumstances and in view of the less than absolute abridgement of appellant's free exercise rights, we conclude that the district court's finding was not clearly erroneous.

We briefly address appellant's assertion that he was entitled to a new trial. Here, appellant seeks to introduce evidence of the sincerity of his religious belief and its importance to the practice of Islam to establish that the denial of his request to attend Jumah prayer was tantamount to a denial of his right to freely practice his religion. In refusing to grant the motion for a new trial the district court concluded that appellant's proffered evidence would be irrele-

vant since the court accepted without question the sincerity and importance of his religious belief. In light of the court's acceptance of the truth of these matters, there was no abuse of discretion in refusing to grant the motion for a new trial. *See Brown v. Royalty*, 535 F.2d 1024, 1027 (8th Cir. 1976).

---

that is necessary to bring a practice within the protection of the free exercise clause is proof of a sincere religious belief. *See Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975). We note that the district court here did not question the significance of attendance at Jumah prayer or the sincerity of appellant's belief.