Nathaniel BUTLER–BEY, Johnnie
Williams-Bey, and David
Head-El, Appellants,

v.

Gerald T. FREY, Donald Cabanna, Micki Andrews, Michael Bowersox, John B. Kemp, David Miller and Ronald Kennedy, Appellees.

No. 86–1200.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1986.

Decided Feb. 10, 1987.

Alan D. Pratzel, St. Louis, Mo., for appellants.

Paul LaRose, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Nathaniel Butler-Bey, Johnnie Williams-Bey, and David Head-El, members of the Moorish Science Temple of America, appeal from the trial court's[1] judgment against them on their 42 U.S.C. § 1983 (1982) claim that officials of the Missouri Eastern Correctional Center[2] denied them the right to free exercise of their religion and to the equal protection of the laws by refusing to permit them to wear fezes, by denying them access to the prison chapel for religious services, and by denying them access to prison funds for the purchase of religious materials. The trial court held that the practices and regulations complained of were not discriminatory and did not violate the plaintiffs' constitutional rights. The court found that these regulations were based on legitimate institutional security considerations. On appeal, the plaintiffs argue that the trial court erred in ignoring the plaintiffs' testimony and in giving "undue weight" to the prison officials' testimony. We affirm.

The plaintiffs essentially attack the magistrate's evaluation of the evidence. Our review of the magistrate's findings in this non-jury case is governed by the clearly erroneous standard, Fed.R.Civ.P. 52(a); *see Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), and we are not free to reweigh the evidence presented to the trier-of-fact. Our review of the magistrate's ultimate conclusions—whether the facts as found support or undermine the constitutionality of a given practice or regulation—is plenary. *Hill v. Blackwell*, 774 F.2d 338, 343 (8th Cir.1985).

1. The Honorable William S. Bahn, United States Magistrate for the Eastern District of Missouri.

2. At all times relevant to this case, plaintiffs were inmates of the Missouri Eastern Correctional Center in Pacific, Missouri. At the time of trial, only Nathaniel Butler-Bey was still incarcerated at the Pacific prison.

We turn our attention first to the legal standard employed by the trial court. The trial court's opinion quotes from and relies on our opinion in *Hill v. Blackwell, supra,* 774 F.2d at 338. In *Hill,* we stated that the burden is on the prisoner challenging the regulation or practice to show that it infringes upon a sincerely held religious belief.[3] *Id.* at 342–43. The responsible prison officials, on the other hand, need only show that the religious practice "could create a potential threat to a legitimate penological objective." *Id.* at 343. If this showing is made, the trial court must defer to the prison officials' expertise in matters of prison administration unless there is substantial evidence that the officials' belief that the regulation is necessary is unreasonable or that their response to the penological objective is exaggerated. If the prisoner has not shown that the officials' belief is unreasonable or their response is exaggerated, "the prisoner's right must yield to the prison regulation." *Id.; see also Little v. Norris,* 787 F.2d 1241, 1244 (8th Cir.1986); *Gregory v. Auger,* 768 F.2d 287, 290–91 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 601, 88 L.Ed.2d 580 (1985); *Otey v. Best,* 680 F.2d 1231, 1233 (8th Cir.1982). The trial court's conclusions of law carefully adhere to the analytical framework developed for prisoner first amendment claims in the opinions of this court and set forth by us in *Hill.*

The plaintiffs challenge four specific regulations or practices of the prison officials. The first is a prohibition against the wearing of headgear in the prison visiting room, dining room, chapel, school, and administration building. The plaintiffs wear fezes. The parties agree that the wearing of fezes has religious significance for members of the Moorish Science Temple. The regulation thus infringes upon the plaintiffs' religious practice. The trial court found as a factual matter that this regulation was prompted by concern that headgear may be used to conceal drugs, weapons, and other contraband. The trial court further found that this explanation was "eminently reasonable," and not an exaggerated response to an otherwise valid security concern.

■ The magistrate's factual finding is amply supported by the record. The prison officials testified that smuggling contraband is a problem at the Missouri Eastern Correctional Center and that headgear can be used for that purpose. There was also testimony that members of the Moorish Science Temple, including one of the plaintiffs, were involved in smuggling contraband. The plaintiffs point to the fact that no member of the Moorish Science Temple has been discovered carrying contraband in a fez, and contend that other security procedures at the prison, such as strip searches given inmates after leaving the visiting rooms, support the conclusion that this regulation is an exaggerated response to the security concern. However, prison officials need only show that the regulated practice creates a *potential* threat to institutional security. *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977). This standard, we conclude, has been met. The trial court properly deferred to the administrative expertise of the prison officials. *See Rogers v. Scurr,* 676 F.2d 1211, 1215–16 (8th Cir.1982) (no constitutional right of Muslim prisoners violated by prohibition of wearing prayer caps and robes outside religious services).

■ The plaintiffs' second allegation is that the Moorish Science Temple was not allowed to hold religious services or otherwise meet in the prison chapel.[4] The plain-

---

3. The parties stipulated at trial that the Moorish Science Temple of America is a national religious organization founded in 1913. The trial court found that the plaintiffs were members of the Moorish Science Temple, Branch Temple 43, while at the Missouri Eastern Correctional Center.

4. The plaintiffs also claim that they were improperly denied access to a scheduled religious meeting on July 4, 1982, in the prison school. The trial court found that the decision to close the school was based on a legitimate concern over the lack of security in the facility. There is evidence in the record that the school was closed because of a temporary shortage of security personnel over the July 4 weekend. The

tiffs also assert that this action was discriminatory in that other religious groups were permitted to meet in the chapel. Finally, the plaintiffs contend the prison's alternative meeting arrangements were unsatisfactory because the Moorish Science Temple members were required to provide a correctional officer to monitor the meetings and to submit weekly membership lists and minutes to prison officials. The trial court found that the Moorish Science Temple has had access to facilities within the prison comparable to the chapel, and that members have been meeting regularly on Fridays, Saturdays, and Sundays. The trial court concluded that there was no constitutional violation or discrimination concerning plaintiffs' access to the chapel.

The testimony of the prison officials and of the plaintiffs is conflicting as to whether the chapel was made available to members of the Moorish Science Temple. The prison officials testified that members were offered the chapel for their services and they turned it down. The trial court found that the plaintiffs have always had access to prison facilities comparable to the chapel for their religious and secular meetings, and sufficient record evidence exists to support that finding. The prison is obligated to afford a "reasonable opportunit[y]," *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972), for the plaintiffs to exercise the religious freedom guaranteed to them by the first and fourteenth amendments. The members of the Moorish Science Temple do not contend that they cannot hold services in the facilities provided by the prison. Thus, the plaintiffs have shown us no reason why the trial court's determination that a reasonable opportunity to worship has been

provided the Moorish Science Temple should be disturbed.

■ Turning our attention to the requirements that a guard be present at their meetings, and that written minutes of meetings and membership lists be provided to the prison administration, we believe that this issue is governed by our recent decision in *Tisdale v. Dobbs*, 807 F.2d 734 (8th Cir.1986). In *Tisdale*, we considered a regulation that prohibited inmates from holding religious services unless a free-world sponsor was present and in charge. *Id.* at 736. We affirmed the trial court's conclusion that the regulation was prompted by a reasonable, legitimate concern for institutional security, and not an exaggerated response to the penological objective. *Id.* at 738. In reaching our conclusion, we recognized that unsupervised group religious services and prayer meetings can become forums for inmate dissension and unrest. *Id.; see Little*, 787 F.2d at 1244 (approving temporary suspension of group religious meeting privileges during period of prison unrest); *Otey*, 680 F.2d at 1234 (approving regulation prohibiting attendance of death row inmates at group religious services).

The regulation we now consider is less burdensome than the one we approved in *Tisdale*. A guard need only be present; the plaintiffs need not find a free-world sponsor to preside over their religious services. Nor have the plaintiffs shown that the prison officials' belief in the necessity for this requirement, or for the membership lists and written minutes, is unreasonable or an exaggerated response to their security concerns. We affirm the magistrate's conclusion that these regulations do not discriminate [5] against the plaintiffs or violate their first amendment rights.

---

plaintiffs complain that they were not informed of the reason for the school's closing. The prison officials testified at trial, however, that they did not wish to broadcast to the inmates that there were not going to be as many guards on duty over the holiday weekend. The magistrate did not err in concluding that this action was a reasonable response to legitimate security concern. The denial of access to the prison school on a single occasion does not rise to the level of

a constitutional violation. *See Leonard v. Norris*, 797 F.2d 683, 684–85 (8th Cir.1986) (temporary suspension of Muslim group meeting privileges during period of inmate unrest held not a constitutional violation); *Little v. Norris*, 787 F.2d at 1244 (same).

5. The plaintiffs contend that these regulations applied only to the Moorish Science Temple and were part of a pattern of discriminatory conduct designed to chill the plaintiffs' exercise of

The plaintiffs' third allegation is that the prison officials refused to provide them with an organizational account or with adequate prison funds to purchase religious materials. The trial court found that the Moorish Science Temple did not have an organizational account but received as much money from the prison as other religious groups. It concluded that there was no evidence that the plaintiffs had been victims of funding discrimination. The record is confusing on this issue, and the parties' citations to the record are of little help in sorting through their conflicting versions of the evidence.[6]

We are again guided by the Supreme Court's admonition that the state may not discriminate against a prisoner's faith by refusing to provide a reasonable opportunity for its exercise comparable to the opportunities afforded other prisoners of different faiths. *Cruz v. Beto, supra*, 405 U.S. at 322, 92 S.Ct. at 1081. However, the Court has also instructed that "[a] special chapel or place of worship need not be provided for every faith, regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n. 2, 92 S.Ct. at 1081 n. 2.

The Sixth Circuit, in *Thompson v. Kentucky*, 712 F.2d 1078 (6th Cir.1983), has considered and rejected both free exercise and equal protection claims grounded on facts analogous to those forming the basis of plaintiffs' claims here. The *Thompson* plaintiffs were Muslims and prisoners of the State of Kentucky. They contended that various prison officials had discriminated against the practice of their religious

faith and violated their right to free exercise by allocating two-thirds to three-fourths less time for use of the prison chapel to Muslim inmates than to Christian inmates, and by providing prison funds for two full-time and one half-time Christian chaplains but no funds for a Muslim chaplain. *Id.* at 1079.

The Sixth Circuit affirmed the district court's summary judgment in favor of the prison officials and held that the facts did not constitute a free exercise violation because the plaintiffs had not been denied any basic right of conscience. *Id.* at 1080–81. Rather, the prison permitted them to use the chapel at certain times and to have a Muslim leader from outside the prison assist them in conducting their services. The free exercise clause, according to the court, "Guarantees a liberty interest, a substantive right; [it] does not insure that all sects will be treated alike in all respects." *Id.* at 1081. The court also rejected the equal protection claim, noting that it would be "wholly impracticable," *id.*, to implement a plan of prison resource allocation that would "conform exactly to the denominational distribution present in a prison at any given time." *Id.* The court observed that such a requirement would create problems for both prison officials and the courts of determining and monitoring the contours of a prison population's religious beliefs, deciding disputes between groups as to the appropriate funding levels and as to the doctrinal distinctions between their faiths, and maintaining comprehensive records of individual inmates' religious practices. *Id.* The court also stated that *Cruz v. Beto, supra*, does not compel

---

their first amendment rights. The prison officials testified at trial that these regulations applied to all prison group meetings, secular and non-secular.

6. Adding to the confusion is an apparent split in 1983 of the Moorish Science Temple membership at the prison. The plaintiffs claimed at trial that there was no spiritual or physical contact between their group, Temple 43, and the splinter group, Temple 1. They further claimed that prison funds allocated to the Moorish Science Temple went to Temple 1, but not to Temple 43. The prison chaplain testified that he

was aware of the split, but his testimony is unclear as to the proportion of funding provided each new group. He did testify, however, that Temple 43 received money from the prison canteen fund, including some money used to purchase fezes. Therefore, his testimony lends support to the trial court's ultimate conclusion—that the plaintiffs were not deprived of an adequate opportunity to practice their religion. The magistrate made no specific finding as to the effect of this split on the allocation of prison funds.

courts to adopt a numerical standard in analyzing prisoner religious equal protection claims. *Id.* at 1082; *see Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081 n. 2.

■ The Sixth Circuit's reasoning in *Thompson* is equally applicable to the funding claim before us. The plaintiffs do not allege that the prison's allocation of resources or denial of an organizational account has foreclosed them from practicing their faith or denied to them any basic right of conscience. It is clear from the record, moreover, that the Moorish Science Temple received prison funds for the purchase of religious materials, although because of an internal split in the group, the plaintiffs may not have received the full amount of funding allocated to the Moorish Science Temple. We conclude that the trial court correctly determined that the plaintiffs were not deprived of a reasonable opportunity to practice their faith, comparable to that provided other religious groups in the prison population.

■ The plaintiffs' final allegation is that the prison officials harassed members of the Moorish Science Temple by administering urinalysis tests to members who attended their annual banquet in 1984. We have carefully reviewed the record and the plaintiffs' contentions under this point of their brief, and we reject this allegation as wholly without merit. We observe only that the magistrate's conclusion that this testing involved no constitutional violation is fully supported by the record evidence that members of the Moorish Science Temple trafficked in drugs within the prison.

We affirm the judgment of the trial court.