Mark Juan HAMILTON, Plaintiff,

v.

Dr. Dora SCHRIRO, et al., Defendants.

No. 91–4373–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

May 11, 1994.

David G. Ott, Brinker, Doyen & Kovacs, P.C., Clayton, MO, for plaintiff.

Greg A. Perry, Mo. Atty. Gen.'s Office, Jefferson City, MO, for defendants.

## *ORDER*

SCOTT O. WRIGHT, Senior District Judge.

Magistrate Judge William A. Knox entered his Report and Recommendation in the above-styled cause on April 13, 1994. Defendants filed exceptions to the Report and Recommendation on May 2, 1994. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court will adopt the Report and Recommendation with the modification set forth below.

Magistrate Judge Knox recommended, and this Court will order by adoption, that accommodations be made by defendants to allow plaintiff to practice his Native American Religion, including the right to have a weekly sweat lodge ceremony. The Court believes the parties are in the best position to fashion the specific means by which this remedy shall be effectuated. Accordingly, the parties will be ordered to meet and arrive at a compromise acceptable to each of the parties.

The parties will then submit a summation of the compromise to the Court for approval.

The Court expects the parties to engage in good faith negotiations and arrive at an agreement. However, if the parties are not able to reach an agreement, each party shall inform the Court of its final position and the Court will conduct a telephone conference to resolve the points of dispute.

Accordingly, it is hereby

ORDERED that the Report and Recommendation of Magistrate Judge Knox, entered April 13, 1994, is accepted by this Court with the following modification. On or before June 6, 1994, the parties shall meet and discuss the specific means by which the ordered accommodation shall be effectuated. In the event an agreement is reached, the parties shall submit a joint summation of the compromise to the Court on or before June 13, 1994. In the event an agreement cannot be reached, the parties shall submit their final positions to the Court on or before June 13, 1994.

## *REPORT AND RECOMMENDATION*

KNOX, United States Magistrate Judge.

Plaintiff, an inmate confined in a Missouri penal institution, commenced this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. Following the filing of this cause, it was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and W.D.Mo.R. 22.

A hearing was held March 29 and 30, 1994, on plaintiff's equitable claims [1] relating to the practice of his religion as a Native American Indian. During the pendency of this case, Congress passed and the President signed into law the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb (Nov. 16, 1993) [2]. The RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if

---

1. Plaintiff's damage claims, and all claims against defendants Steve Long and Dick Moore were dismissed by the Honorable Scott O. Wright on November 23, 1993.

2. Missouri Senators Bond and Danforth voted in favor of the RFRA. The House of Representatives passed the bill on a voice vote, so no record of individual votes is available.

the burden results from a rule of general applicability" except the government may burden the exercise of religion if "(1) it is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b). Two purposes of the ·RFRA are "to restore the compelling interest test" and "to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1).

Senate Report No. 103–111, clearly shows Congress intended the law to apply to prisoners. The legislative history acknowledges the difficult and complex challenges encountered in operating prisons and jails in a safe and secure manner, as well as the due deference accorded prison administrators in establishing regulations and procedures necessary to "maintain good order, security and discipline, consistent with consideration of costs and limited resources." Senate Report No. 103–111 (July 27, 1993) at pp. 10, 11, U.S.Code Cong. & Admin.News 1993, pp. 1892, 1900.

> At the same time, however, inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements.
>
> . . . .
>
> The committee is confident that the compelling interest standard established set forth in the Act will not place undue burdens on prison authorities. Instead, it re-establishes a standard that is flexible enough to serve the unique governmental interests implicated in the prison context. Accordingly, the committee finds that application of the act to prisoner-free exercise claims will provide a workable balancing of the legitimate interests of prison administrators with the Nation's tradition of protecting the free exercise of religion.

*Id.*

In this case, plaintiff Mark Juan Hamilton, an Indian, seeks leave to practice his Native American religion. Plaintiff wants to let his hair to grow, and to use a sweat lodge, sage, cedar, sweet grass, kinnikinnik, pine, mint, medicine bags, eagle feathers, hawk feathers, owl feathers, prayer stick, beads, necklace, dancing belts and sacred pipes for religious purposes. Plaintiff asserts the sweat lodge ceremony is an integral part of his religion and that worship must occur outdoors on the ground.

The Missouri Department of Corrections (MDOC) enforces institutional and divisional regulations which require inmates to cut their hair. Plaintiff and other Native American Indians have cut their hair pursuant to the regulations. Prior to enactment of the RFRA, these grooming regulations were upheld as constitutional, even when challenged on religious grounds. *See Sours v. Long,* 978 F.2d 1086 (8th Cir.1992); *Campbell v. Purkett,* 957 F.2d 535 (8th Cir.1992); *Dunavant v. Moore,* 907 F.2d 77, 79 (8th Cir.1990); and *Iron Eyes v. Henry,* 907 F.2d 810 (8th Cir. 1990). The MDOC also has denied plaintiff the use of a sweat lodge and some of the other items requested in this lawsuit.

The federal courts have broad power to grant or deny equitable relief in a civil rights action. *Holt v. Sarver,* 442 F.2d 304 (8th Cir.1971); *Knowles v. Board of Public Instruction,* 405 F.2d· 1206, 1207 (5th Cir. 1969); *Johnson v. Lark,* 365 F.Supp. 289, 304 (E.D.Mo.1973). A "large degree of discretion is vested in the trial court" in determining whether an injunction should issue. *American Home Investment Co. v. Bedel,* 525 F.2d 1022, 1023 (8th Cir.1975), *cited with approval in Rittmiller v. Blex Oil, Inc.,* 624 F.2d 857 (8th Cir.1980). Injunctive relief, however, is considered an "extraordinary remedy." *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2942 at 368 (1973). As such, federal courts should not employ their equitable power to interfere with the internal administration of state correctional facilities absent a clear showing of a violation of federally protected rights. *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir. 1982); *Anderson v. Hascall,* 566 F.Supp. 1492, 1495 (D.Minn.1983). Traditionally, "the main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." 11 C. Wright & A. Miller, *Federal Practice and Procedure,*· § 2941 at 368–69. The burden of proving

these prerequisites is on the party seeking the relief. *United States v. Dorgan,* 522 F.2d 969, 973 (8th Cir.1975). Thus, to obtain permanent injunctive relief, a party must show first, his rights have been violated; second, there is a threat of future violation; and third, such threat is more than a "mere possibility." *Rogers v. Scurr,* 676 F.2d at 1214. And the federal courts must use restraint "in dealing with the complex and intractable problems of prison administration." *Id. See also Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

In this case, plaintiff has come forward with substantial evidence that he has been denied the right to practice certain important tenets of his religion by corrections personnel. In the absence of court intervention, it appears probable from the evidence that plaintiff will continue to be denied the right to practice these tenets. Thus, plaintiff has met his initial burden of proving the prerequisites to injunctive relief.

Under case law in effect prior to enactment of the RFRA, an inmate's exercise of freedom of religion could be restricted if the restrictions were reasonably related to prison security. *Little v. Norris,* 787 F.2d 1241, 1244 (8th Cir.1986). *See also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Brown v. Delo,* No. 92–2051, slip op. (8th Cir. Mar. 17, 1993) (unpublished); *Butler–Bey v. Frey,* 811 F.2d 449, 451 (8th Cir.1987); *Otey v. Best,* 680 F.2d 1231, 1234 (8th Cir.1982). Prison officials had to produce evidence that the restriction placed on an inmate's freedom was in response to a security concern. At that point, the burden shifted to the inmate to show by substantial evidence that the prison officials' response was exaggerated. *Otey v. Best,* 680 F.2d at 1233 (citing *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806–07, 41 L.Ed.2d 495 (1974)). *See also Salaam v. Lockhart,* 856 F.2d 1120 (8th Cir.1988). Without ruling on the issue, the court notes plaintiff has submitted evidence to support his assertion that the response in this case was exaggerated.

After enactment of the RFRA, plaintiff must show that the prison regulations and practices place a significant burden on the exercise of his religion. The burden then shifts to corrections personnel to show the regulations and practices further a compelling governmental interest and that the regulations and practices are the least restrictive means of furthering the compelling governmental interest. 42 U.S.C. § 2000bb.

Based on the evidence presented at the hearing and in the written submissions by the parties, the court finds the following.

In 1991, plaintiff sought permission through informal resolution requests and the grievance procedure to practice his Native American religion in certain ways, which included requests for a sweat lodge. Plaintiff's requests were denied at all institutional levels. The stated reasons for such denials were security concerns, the cost involved, and institutional regulations. When administrative remedies were exhausted, plaintiff filed this lawsuit.

Plaintiff seeks outdoor construction of a sweat lodge and fire pit because the tenets of his religion require contact with the ground during worship and religious ceremonies. Plaintiff asserts he cannot pray or otherwise practice his religion unless he has been purified in a sweat lodge ceremony. Although defendants do not concede plaintiff's religious beliefs are sincerely held, they did not produce evidence showing otherwise and several corrections personnel testified the sincerity of plaintiff's beliefs are not at issue. The court notes plaintiff actively practiced his religion in a penal institution in the state of Washington, and has continued to request permission to do so in Missouri. Thus, this court finds plaintiff's beliefs are sincerely held. Furthermore, the evidence clearly establishes the sweat lodge purification ceremony as an essential component of the Native American religion which plaintiff practices.

Although Native American religion and its practices are not familiar to many, it is a bona fide religion. The practice of this religion has the same beneficial effect on its adherents as do other religions for their adherents. Within the prison system, it has the benefit of promoting inner peace, has a

calming effect and causes the practitioner to become a more cooperative, peaceful, self-controlled individual. Defendants do not challenge the legitimacy of the Native American religion.

A sweat lodge ceremony consists of the use of a sweat lodge made of bent willow poles covered with hides, blankets or tarpaulins. Rocks are heated in a separate fire pit and then moved to the center of the lodge. Water is poured on the hot rocks, creating steam. Participants enter the lodge, which is completely covered to keep out light and to keep in the steam and heat, and offer prayers. Participants are unclothed and sweat during the ceremony. The ceremony typically lasts between one and three hours.

Plaintiff is currently housed at Potosi Correctional Center (PCC). PCC does not allow a sweat lodge, sweat lodge ceremonies or fires in the institution. All chapel facilities at PCC are inside the buildings. Potosi follows Department of Corrections' regulations which prohibit hair length beyond the collar.

Maximum security correctional facilities in other states permit sweat lodge ceremonies and the growth of long hair as part of the Native American religious practices. The fire needed to heat the rocks can be contained and/or controlled to meet the Uniform Fire Code standards. The annual cost associated with the practice, as presented at the hearing, is minimal.

In denying plaintiff's request, corrections personnel in Missouri did not (1) make any inquiry of problems encountered by personnel at institutions which allow the practice of Native American religions; (2) contact any Native American religious leader to determine the feasibility of plaintiff's requests, or to determine whether other acceptable alternatives existed; or (3) do a cost analysis or make inquiry regarding the availability of funds or the amount of funds that would be required. Instead, Missouri corrections personnel relied on their experience in corrections work and on a belief that such practices would interfere with the safety and security of the institution. They made absolutely no effort to determine whether the religious practices could be accommodated while still taking care of safety and security concerns. They also presented no evidence showing any serious effort had been made prior to the hearing to determine the experience of other institutions which allow Native American religious practices.

Defendants state long hair can be used to conceal drugs, weapons and contraband, and can be changed to alter appearance and make identification more difficult. Female prisoners in Missouri, however, are allowed to wear long hair although the hair can be used to conceal drugs, weapons and contraband. Likewise, identification photographs of some male prisoners taken when the inmates had long hair[3] were not retaken after the hair was cut, suggesting identification problems are not real. Further, there was no evidence presented of identification problems with those inmates as a result of their photographs and altered hairstyles, and only minimal evidence of any problems with contraband concealed in long hair. The deposition testimony from other maximum security institutions which allow long hair reported no significant problems with hair length.

Corrections personnel who testified at the hearing stated they would follow court orders on this matter and that appropriate or necessary funds would be found if the court finds in favor of plaintiff. Defendants' witnesses also did not testify that allowing the practice of Native American religion would place substantial burdens on the prisons or the prison staff. Instead, the evidence indicates that corrections personnel believe there is a possibility that inappropriate behavior, such as assaults or drug use, could occur in the sweat lodge; implements needed for the fire could be used as weapons; and that other groups of prisoners could become envious or claim favoritism if plaintiff and Native American Indians are allowed these religious privileges. No evidence was presented to indicate what steps could be taken to minimize these concerns or to indicate defendants attempted to accommodate plaintiff's right to practice his religion while maintaining a safe

---

**3.** During the pendency of *Iron Eyes,* Native Americans were given an exemption from the grooming policy and were permitted to let their hair grow.

and secure institution. The testimony, however, from administrators of maximum security institutions which allow the practice of the Native American religion clearly indicates (1) such practice has not unduly compromised the safety and security of their institutions and (2) their initial concerns had not been realized.

■■■■ Within this framework, the court finds that the regulations and policies at issue in this lawsuit with regard to plaintiff's practice of his Native American religion substantially burdens plaintiff's exercise of his religion. Although safety, security and cost concerns may be shown to be compelling governmental interests in the prison setting, defendants have not shown that the regulations and practices used by the Missouri Department of Corrections are the least restrictive means of furthering that interest. Defendants have not even shown a willingness, after enactment of the statute, to implement less restrictive means in the absence of a court order to do so. Thus, plaintiff's attorney is entitled to attorney fees. Defendants take substantial steps to accommodate Christians, Jews and Muslims in providing facilities and opportunities to meet and pray. Their reluctance to do the same for Native Americans is based on lack of information, speculation, exaggerated fears and post-hoc rationalizations, not on real evidence of problems. Under these circumstances, the RFRA, 42 U.S.C. § 2000bb, clearly mandates that prison officials make accommodations for plaintiff to practice his religion and the court will recommend that injunctive relief be granted to plaintiff.

■■■ The court is cognizant of defendants' suggestion in their March 16, 1994, response that the constitutionality of the RFRA has not yet been determined. Section 5 of the fourteenth amendment authorizes Congress to enact laws enforcing the provisions of the amendment. The fourteenth amendment encompasses the liberties guaranteed by the first amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). It follows, therefore, that Congress may enact laws enforcing the provisions of the first amendment. In the absence of compelling arguments or case law indicating otherwise, this court will not further address this issue.

Based on the foregoing and pursuant to the provisions of 28 U.S.C. § 636, it is hereby

RECOMMENDED that defendants be enjoined from enforcing against plaintiff hair length regulations and grooming policies which burden the exercise of plaintiff's Native American religion. It is further

RECOMMENDED that accommodations be made in accordance with the Religious Freedom Restoration Act to allow plaintiff to practice his Native American religion, including the right to have a weekly sweat lodge ceremony. It is further

RECOMMENDED that within thirty (30) days after the adoption of this report and recommendation, defendants report to the court and counsel for plaintiff what accommodations have been made. It is further

RECOMMENDED that within twelve (12) days hereof, plaintiff submit his request for attorney fees.

Under 28 U.S.C. § 636(b)(1), the parties may make specific written exceptions to any or all of the foregoing recommendations within twelve (12) days from the date hereof. Absent exceptional circumstances, no extensions of time to file exceptions will be granted because the hearing in this case was delayed twice and because of the significant deprivation of rights involved. *See Nettles v. Wainwright,* 656 F.2d 986 (5th Cir.1981); *Messimer v. Lockhart,* 702 F.2d 729 (8th Cir.1983); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Nash v. Black,* 781 F.2d 665 (8th Cir.1986). The parties are advised that failure to make specific written exceptions to this report and recommendation may result in a waiver of their right to appeal.

Dated this 13th day of April, 1994.