142 F.3d 443
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael JACKSON, aka Shakir Abdul Rahim; Robert James, aka
Al-Wakeel K. Mahmood, Plaintiffs-Appellees,
v.
James H. GOMEZ, Defendant,
G. Smith, Warden; G. Avila, Chief Deputy Warden; Abdul S.
Muhammad, Muslim Chaplain, Defendants-Appellants.
 No. 97-15580.
D.C. No. CV-92-05822-OWW/SMS.
 United States Court of Appeals,
Ninth Circuit.
 Submitted November 3, 1997.**
Decided April 23, 1998.
 
 Appeal from the United States District Court for the Eastern District of California Oliver W. Wanger, District Judge, Presiding.
 Before WIGGINS and KLEINFELD, Circuit Judges, WILSON***, District Judge.
 MEMORANDUM*
 Although appellees are no longer incarcerated at Corcoran, this case is not moot because they seek monetary damages. See County of Los Angeles v. Davis, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (a case is moot only when "the parties lack a legally cognizable interest in the outcome" of a case).
 We review the district court's qualified immunity determination de novo. Lum v. Jensen, 876 F.2d 1385, 1387 (9th Cir.1989). "Review ... is limited to determining, as a matter of law, whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.... Absent binding precedent, we look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established." Id. Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
 The prison officials in this case were entitled to qualified immunity. They did not deprive plaintiffs of a clearly established right.
 The extent of religious activities available to prisoners is subject to reasonable penological concerns. In O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1897), the Supreme Court stated:
 To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.... [W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.
 Id. at 349 (citations and quotations omitted).
 Warden Smith stated that the Nation of Islam inmates were no longer allowed to hold meetings in the chapel because prison policy prohibits religious meetings in the chapel, unless the prisoners have non-inmate supervision, which was unavailable to the Nation of Islam prisoners. Prison regulations that require non-inmates to lead religious services and have the effect of prohibiting religious services for groups that cannot meet such a restriction have been consistently upheld by this and other courts. See, e.g., Anderson v. Angelone, 123 F.3d 1197 (9th Cir.1997) (upholding Nevada's ban on inmate-led religious activities); Allen v. Toombs, 827 F.2d 563 (9th Cir.1987) (upholding regulation that "Pipe Bearer" for Native American "Pipe Ceremony" be a non-inmate); Tisdale v. Dobbs, 807 F.2d 734 (8th Cir.1986) (upholding requirement that religious services be led by "outside free-world sponsor," thereby effectively prohibiting all Muslims services).
 Also, based on evidence before them, the prison officials believed that permitting the Nation of Islam prisoners to conduct unsupervised services would pose a security concern. The policy requiring Nation of Islam inmates to hold their meetings in the prison yard where they could be properly supervised was therefore "reasonably related" to the "legitimate penological interests" of prison security.
 The prison officials did not violate any of the plaintiffs' "clearly established" rights. The First Amendment requires that prisoners practicing unconventional religions have "a reasonable opportunity in pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). It does not require "that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Id. at 322 n. 2. The Nation of Islam had 7 to 20 members in a prison population of approximately 5,000. It was not clearly established that they had a constitutional right to use the chapel. See, e.g., Ganther v. Ingle, 75 F.3d 207 (5th Cir.1996) (upholding refusal to allow 40-member House Hold Faith Full Gospel Church to use prison chapel for services and Bible study); Butler-Bey v. Frey, 811 F.2d 449 (8th Cir.1987) (upholding prison policy prohibiting Moorish Science Temple members from using prison chapel).
 The district court's denial of summary judgment on the issue of the prison officials' qualified immunity is REVERSED. We remand for entry of summary judgment granting qualified immunity.
 REVERSED and REMANDED
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 * The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3